May it please the court. My name is Mahesh Subbaraman. I represent plaintiff appellant Geronimo DeLuna. When a district court decides summary judgment, it has two main jobs. To ensure that material fact disputes are decided by juries and to construe the facts and the both of those jobs. For that reason, the court should reverse the district court's grant of summary judgment to Mower County and allow this case to proceed to trial. This case is about whether Mower County was negligent in requiring Mr. DeLuna, when he was an inmate, to wear shoes that were too small. Negligence, as we all know, consists of four main elements duty, breach, injury, and causation. On this record, the following points are undisputed. First, the county had a duty to provide suitable clothing to prisoners. Second, the county provided shoes to Mr. DeLuna that were too small. And third, after the county provided too small shoes to Mr. DeLuna, a blister developed on Mr. DeLuna's foot that became an open sore, that became a severe infection, that put Mr. DeLuna in the hospital. On the way you state the question, do they have to be way too small? I'm basing it on the Wendt case. I think in Wendt, whether it's too big or too small, the bottom line is if it doesn't... No, no, counsel, that's the question because it says clown shoes, you know what I'm referring to. Does it have to be way too small? No, your honor, I don't think... A little bit too small? Your honor, if it's small enough to cause an injury to an individual, then it is not A material fact dispute exists here on causation, namely whether the too small shoes caused the blister on Mr. DeLuna's foot. The district court, however, elided this reality through an analysis that stands in direct conflict with over a century's worth of Minnesota law. In particular, I'm referring to the district court's analysis of breach, causation, and immunity, and I'll take each of those elements in turn. With respect to breach, what the because it is not objectively reasonable to expect an inmate to contract a MRSA infection by wearing shoes that are too small for less than 24 hours. Counsel, weren't they looking at the wrong consequence? Wasn't the consequence actually the blister and not the staph infection? That's correct, your honor. In this case, and this kind of goes to an even preceding point, which is that foreseeability is not an aspect of breach. It's an aspect of duty. You determine whether or not it's foreseeable that particular conduct would cause an injury, and based on that, you determine whether a duty does or does not exist. Here, the district court acknowledged there is a duty, both of general care and under the statute to provide suitable clothing. At that point, you determine whether the duty was breached. You don't ask whether it was foreseeable that a particular injury might occur and then determine there was no breach because in the court's view, the injury was not foreseeable. And on that score, Minnesota law is clear. When you've got a statute in play, to violate the statute is to deviate from the standard of care owed to another. Now, if this court is concerned about the issue of foreseeability, it need only look all the way back to 1896 to what the Minnesota Supreme Court said in Christensen v. Chicago, in which it said that the law is that if the act is one which the party ought in the exercise of ordinary care to have anticipated was liable to result in injury to others, then he is although he could not have anticipated the particular injury which did happen. And a more modern articulation of that by the Minnesota Supreme Court in the Demagla case from 2011 is, the test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether the possibility of an accident was clear to the person of ordinary prudence. As anyone who has worn shoes that are too small knows, it is eminently foreseeable that that will cause an abrasion on the skin, cause a blister, and then lead to the consequences that occurred in this particular instance. And even if the court- I thought foreseeability was not part of proximate cause in Minnesota. It is not, Your Honor. I thought you just retreated to a foreseeable argument. In talking about foreseeability, I was only referring to if the court were to indulge the district court's analysis with respect to duty. But foreseeability is absolutely not a part of the proximate cause inquiry. Counsel, this is all Minnesota law, right? That's correct. Okay. I know the Wendt case, of course, thoroughly. What's the next- because it's unpublished and it's a court appeals case. For the Minnesota Supreme Court, what's your closest case? What's your best case? Well, Your Honor, ironically enough, I think the Christensen case from 1896 carried through to the Delwo case in 1973. Those cases are our best cases. And the facts of Christensen are actually rather interesting in terms of just establishing how robust Minnesota is in speaking to the issue of negligence. In Christensen, what happened was you had two railroad cars that were traveling in the same direction, one faster than the other. And when you have two cars that are traveling in the same direction, at that time, the customary duty was there had to be a certain distance between those two cars. That distance was not observed by the lead driver. Now, what happened in that case was it wasn't an instance of the two cars impacting one another, as one might expect. It was a case of an individual in the lead car looking back and seeing this car rushing at them, getting dizzy, and falling off the tracks into the path of the second car. Now, that's not something you would naturally expect to happen. But the court said, in this instance, we have a duty in place that these cars have to be at a certain distance. That duty was not followed. And although the way in which the injury ultimately matured here is not one that might naturally be expected, nevertheless, under Minnesota law, as long as the injury followed from an unbroken series of events, that's all that matters. And here, we have an unbroken series of events, from two small pair of shoes causing a blister, from the blister becoming an open sore, from the open sore developing an infection. Counsel, is there really an unbroken series of events here? Aren't there several potential intervening causes? He cleaned out a hog confinement unit, refused to receive treatment. Seems to me there may be some intervening potential causes. Well, speaking to those points, I think that it's fair to say that the county argues that there are intervening causes. But there are disputed material issues of disputed fact in the record on that point. For example, if you look at appendix page 29 regarding the issue of whether Mr. DeLuna refused medical treatment, Mr. DeLuna, in his deposition, disputes that. He says, I don't recall ever refusing medical treatment. Now, the county says and puts forth documents indicating that he did refuse, but that's a material issue of fact for a jury to decide. What about wearing the shoes? I thought he agreed he wore a different pair of shoes right in the middle of all this. Well, it may well be the case that he, for some period of time, while he was on this sentence to serve program, was wearing a different pair of shoes. But it does not obviate the fact that he did wear the pair of shoes, of two small shoes, that the jail gave him initially, and that his contention, based on this record, is that caused a blister. In fact, if you look at appendix page 27, his deposition, and this is in describing the injury to one of his correctional officers, he says, as I was walking in from STS, one of the guards, they strip searched us, so he noticed my foot, and he asked, what happened? And I was like, well, they gave me a two small pair of Crocs, and this is the outcome of it. So his testimony is that the injury, the blister on his foot, was the result of the two small pair of shoes that he was given. And whether there were intervening causes, or perhaps an alternative defense that can be raised by the county, those are issues of fact to be decided by a jury, not to be determined on summary judgment. Well, unless we had a Minnesota case. There's some Missouri cases. We've had intermediate court appeals since the Civil War in Missouri. So therefore, sometimes they have a lot of cases that are close. There are certainly a lot of cases on the books, to be sure, especially when it comes to negligence. But I think that that then speaks to the bottom line importance of the principles that are at stake here. And the ultimate principle, at least when it comes to summary judgment, is to ensure both that fact disputes are decided by juries, and to ensure that the facts in the record are read in a light most favorable to the non-moving party. So it's not to say that the county cannot marshal facts on its side to argue that it wasn't negligent in this case, or that there wasn't causation. But it is to say that those facts, on a summary judgment standard, aren't given the weight in terms of how the record is read. What is given the weight are the facts in a light most favorable to Mr. DeLuna. So briefly moving on from breach to causation, and this speaks to the point that you were mentioning a moment ago, Judge Gross, in regards to the issue of causation. I think the key here is recognizing that the facts have to be read in Mr. DeLuna's favor. And the district court got it exactly opposite by starting with the county's expert. And the county's expert, in terms of the passage that's cited in the district court opinion, he doesn't say, well, I physically examined the defendant, and I made a medical determination on this. Instead, what he's doing is speculating. And he's saying, well, Mr. DeLuna has tattoos. He's been known in the past to be an intravenous drug user. Those could maybe be possible causes of this. Now as an expert, he can opine on that subject. But at the end of the day, Mr. DeLuna has said, I got this blister as a result of a too small pair of shoes, and I've never experienced a MRSA infection anywhere else on my body. This is a doctor who says it's impossible to pinpoint where he contracted it. And Mr. DeLuna contends otherwise. And his deposition testimony establishes a logical, common sense series of events. And also on the record, to the extent that the court has any doubts about this, you have in the record infection training that was provided at the Mauer County Jail. And if you look at appendix page 199 or appendix page 205, in both of those instances you have PowerPoint slides or informational material being provided to jail officials in which they're being told that open sores on an individual's body can lead to a MRSA infection. So there is more than enough evidence in the record here to go to a jury to make a determination whether it wants to believe the county's expert or the more common sense explanation provided by Mr. DeLuna. Counsel, doesn't he have to show under Minnesota law, beyond conjecture, that this was a substantial factor in him contracting the staph? Has he met that standard? I believe he has, Your Honor, based on both the record evidence and on what he's obligated to provide at summary judgment. And what he's obligated to provide at summary judgment is a straightforward, factual explanation of what occurred in terms of the blister that occurred on his foot following to an open sore, following to an infection. And he provided that information, and certainly his doctors, the doctors who treated him, would be prepared to testify at trial to that issue as well. On that note, Your Honor, I notice that I'm into my rebuttal time, and I'd like to reserve the remainder of my time. Very well. Thank you. May it please the court, my name is Jason Hively. I'm accompanied with my colleague, Andrew Wolfe, and we represent the defendant, Appleese, in this case. I want to touch on a couple of things, and I guess right out of the chute, I want to say that there was no mention by counsel regarding official immunity, and I think that's one of the important parts of this case that needs to be addressed. I know there was a brief mention of WENT, and in using WENT and trying to apply that to this case, as Your Honor mentioned, there was a discussion about clown shoes in the WENT case. This case is not about shoes that are giant shoes or children's shoes. This is a case about shoes that are too tight. And yes, Mr. De Luna can say that, but he is not going to be able to testify at trial that his too tight shoes caused him to have certain symptoms, and it was a direct result of what he did, and then ultimately it turned into MRSA. Counsel, why was it duty to provide suitable clothing, not a ministerial duty, given that there's a statutory requirement and that it's a rather simple and straightforward requirement? I think that one of the things is that there's a requirement for suitable clothing, but there's also not an opportunity to provide perfect fitting clothing. If he wants a pair of perfect fitting shoes, there isn't a budget for that. I think the best thing to look at is that his right foot was just fine, so he's wearing these Crocs that are supposedly unsuitable and that no one could ever imagine putting him in these Crocs and that he obviously would contract some kind of, whether it's redness or blister. But I'm talking about the nature of the, whether it's ministerial or discretionary. It can't be ministerial because they have to be allowed for certain things. The best example is that when Mr. DeLuna said, my foot is swelling, I have an injury, could I get a bigger pair of shoes, they provided him a pair of Crocs that were bigger than what the size was that he actually wears. There has to be that discretion. There has to be that opportunity for the correctional officer to pivot and say, I'm going to give you a bigger shoe than what you normally wear because I have that discretion to do that. As long as it's not a clown shoe. Well, and there are limits. If they wanted him to wear giant size 18 shoes that were massively too large, I would also argue that in the Wink case, and I was involved in that, the issue wasn't just she was provided with clown shoes. It was that the way the jail was set up, the only way to get to court for her hearing was to walk out of the jail, up steps of a 1900s courthouse, and on the way back down the stairs was when she fell because of the shoes. In this case, we don't have that. He could have been given a size 22 Croc and he was sent to a cell and then he went to bed. There's no requirement that he wear those Crocs in the record. In fact, to the contrary, he's allowed to wear his own shoes on STS. So for them to argue that there's going to be some way that they can distinguish at trial that it was the Crocs that he was issued and perhaps never really wore. He certainly didn't run a marathon in them. I can understand if that was the argument. He gave him the Crocs, made him run a couple of miles or a marathon. That's different. He wasn't required to do anything except return to a cell, which is what he did. You're convincing me that there are a lot of facts disputed in this case and this is not right for summary judgment. I think honestly what I'm replying to is their moving target and that this started out from the very beginning that this was a MRSA case and there was no question about that. And then what we believe happened is once they started to actually research the issue of MRSA and that it was not, according to their complaint, something that just thrives in jails. I've been to a lot of jails in my professional capacity, of course. And in looking at those jails, they're clean. And if their argument is that they are not clean and that they breed MRSA, they must have Googled that and determined that's not the case because they abandoned that claim along with a number of others. Our expert, our medical expert, is providing an opinion based on peer-reviewed materials and based on what the record will show about MRSA and about the symptoms that he had. And if they want to dispute that, that ship has sailed. They had every opportunity to hire an expert or to pose a doctor or to talk to someone who actually knows about MRSA and they chose not to. They didn't even offer a Google search term showing that they had come up with, well, if you have a blister, that could become MRSA. I understand training materials talk about that. But I think the bigger issue is let's go all the way back to these symptoms. Our expert says that MRSA is an infection. And if you look at the symptoms and the way it manifests itself, redness, blisters, oozing, all of these kinds of things that can happen when you have MRSA. As our expert indicated, more likely than not, he had MRSA before he ever came close to this particular pair of Crocs. They have no evidence to disprove that. Then if we want to cherry pick a symptom, they've selected blister. So what is it about the blister that is a danger? If we want to plug that back into what the district court said, the district court said it wasn't foreseeable that giving these tight shoes would turn into MRSA. We would argue that that's the same case if you plug the blister in there or if you plug oozing in there or if you plug redness into that formula. So Mr. DeLuna has redness that's on his foot and soreness and then he's provided this pair of Crocs. Why aren't we talking about redness? Okay, I'll ask you the same question and ask the other side. This is Minnesota law. We're looking for a Minnesota case. We'd really like it to be by the Minnesota Supreme Court and look a lot like this one. What's your best case? We weren't able to find anything except the Vassallo case. But then that focuses more on the issue of whether this is an official immunity case. And I think that if that's where we're headed, if we can't find anything that specifically speaks on the issue of is a pair of shoes issued in jail unsuitable because it's one size too small, two sizes too small, three sizes too small, I think that that's such a gray area that then the bigger issue becomes what was done once the individual received the Crocs? Was there actually a foreseeable danger? And I don't see that redness or blisters would be a foreseeable danger. What we're talking about is MRSA. That's what makes this case serious or interesting. But ultimately what Mr. DeLuna's counsel has argued is that MRSA doesn't matter. It's inconsequential. Perhaps if the jury were to just come to that conclusion naturally, well that's not how a jury trial works. They can't just stand up in opening arguments and say you're going to find out that MRSA could come from any source and that it's really bad in jails. If they don't offer a medical expert to say that, then that information should be struck from the record. They're not going to have that opportunity to reach that conclusion. So if we go back to this is a, go ahead. How about DeLuna's reliance on the 1896 Christensen case? It would be foreseeable two small shoes causes redness, causes blister, and he at least cites that case to suggest that then anything that naturally flows from that, MRSA infection into the open wound, should be foreseeable. I think there's a couple of things about that. First of all, Christensen wasn't an official immunity case and we still have that that we can hang our hat on in this. And the other argument. Foreseeability. Right. If we go back to foreseeability, I think we also. I think you do run into the discretionary problem on your official. Well, I think that the bigger issue then if we're talking about foreseeability, then we're looking at whether it was a danger that was objectively reasonable to expect. And I don't see any case law that supports that if you apply that formula to anything that's happening today with respect to the issuance of jail clothing, that is going to say that their issuance of a pair of Crocs that are slip-on Crocs that are a little too tight would be an objectively reasonable expectation of a danger. And it would be foreseeable that the individual could develop a redness or a blister or eventually MRSA. So I think and frankly, it's because the lack of Minnesota case law that we're kind of in a gray area here, but at the same time, I think because there is no case law about that that will specifically direct this court how to handle this issue. I think we look back then at the very specific legal claims that were made in the beginning, which is the jail was responsible for Mr. DeLuna contracting MRSA. And that's not supported by the record. And it's now been essentially abandoned by counsel and by Mr. DeLuna. And we're left with this one small issue of a blister. And if it was just a blister, if there was no MRSA, if he had a blister that was just cared for in the jail, there wouldn't be any kind of an injury and it wouldn't be construed as a danger that could be construed as a breach of their requirement to provide him care and take care of his needs. Counsel, if I was to conclude that proximate cause is the real issue here and not breach of duty, explain to me how we can affirm the district court on summary judgment. I think that you can look at the specific nature of what the shoes did and the fact that he already has redness and that he's already started to show signs of some kind of an injury. It existed before he was provided Crocs. And if there's a proximate cause issue that's buried in there somewhere, we still don't have any evidence that demonstrates that the Crocs were responsible for anything else. Because as soon as he is issued the Crocs, the very next day they're gone. And it isn't until three days later that he develops any kind of a blister. So if we want to say that it's a proximate cause, there needs to be some evidence other than Mr. DeLuna saying they're connected. He wore the shoes and he believes that that caused a blister, except that that was 72 hours later that the blister formed. So what about all of the things in between? And Your Honor, I had mentioned earlier about the hog confinement and the fact that he refused care. On the one hand, they rely on the medical records to say, well, you knew that there was something going on. But on the other hand, when the medical professionals who saw him say he wouldn't even let us look at his foot, then they're saying that's their word against Mr. DeLuna's. He's offered nothing to rebut that. And he's certainly had every opportunity to receive care and treatment. In fact, he's taken to the Mayo Clinic for treatment for MRSA. He's taken to one of the best hospitals in the state to be treated for this injury. And the bigger question then becomes, how can he connect that brief moment in time where he has tight-fitting Crocs to something that translates into a danger or an injury, something that the court system should be clogged with? Your Honor, we would request that the, well, they've got four minutes left. But I guess the final thing I would say would be to ask this court to affirm what Judge Magnuson ruled in his order and affirm the decision to grant summary judgment and dismiss this case. Very well. Thank you, Mr. Ively. Thank you. I want to speak briefly to the immunity issue because I did not speak to it when I was initially up at the podium. There's no question that Minnesota Statute 641.15 establishes a ministerial duty. It says, under Minnesota law, a ministerial act is absolute, certain, and imperative involving merely the execution of a specific duty arising from fixed and designated facts. The clothing size of an individual is a fixed and designated fact. What is suitable to him is what meets that clothing size. So that by itself establishes the ministerial duty. But if the court has any doubts on this point, the Eighth Circuit has said time and again that it is its responsibility to follow the decisions of an intermediate court of appeals when that is the best evidence of how a Minnesota state court would address this issue. And here, the other side has put forward nothing to establish that Wendt doesn't speak to this issue. They have, to be sure, drawn on inconsequential distinctions, like, for example, saying that that case was about two big shoes rather than two small shoes. But if you think about it from a common sense perspective, smaller shoes are a bigger problem in terms of suitability than bigger shoes. They cause greater problems. So there's also a common sense angle to all of this to be considered, which is that when you give inmates ill-fitting clothing, it puts them in danger and it puts other people in danger. It risks them in terms of exposure. It limits their mobility. And it can lead to the kinds of consequences that we see present in this case. So this is simply a matter of respecting what the Minnesota Court of Appeals observed in Wendt. This is a ministerial statute that applies a ministerial duty. Now, I want to address two points that opposing counsel made while he was at the podium. First, he attempted to argue that we have somehow abandoned the issue of whether or not a blister could be the basis for a claim of negligence here. That is simply not correct. The complaint in various places speaks to the blister and the consequences flowing from it. So there's been no abandonment of that claim. And then finally, while opposing counsel in this case goes out of his way to emphasize this is a case about MRSA, this is a case about MRSA, this isn't a case about MRSA. This is a case about a natural, probable chain of events flowing from ill-fitting shoes that caused a blister on someone's foot. And if the court needs a common sense frame of reference to think about it, to the extent we lack Minnesota Supreme Court authority here, think about this as any negligent car accident. And imagine the district court had concluded in this case, it's not reasonably foreseeable that driving 20 miles over the speed limit would cause a MRSA infection to the injured driver who was taken to the hospital where the infection developed. That would make no sense. And it would foreclose relief in many, many more cases, well beyond this one. So to the extent that this case is about negligence and is about the 100-year tradition that Minnesota courts have established in terms of how foreseeability works, how approximate cause works, it's important that those principles be applied consistently in this case as in any other. Because the limits of liability that are articulated in this case will inevitably translate to those other cases. For those reasons, we think you should reverse the decision below. And we thank you for your time.